Good morning, Your Honors. Kathleen March of the Bankruptcy Law Firm, appearing for the Appellant to Debtor Ray Cai, seeking reversal of a non-dischargeability judgment that was entered solely pursuant to 11 U.S.C. Section 523A-2A, which is services or money obtained by false pretenses, false representation, or actual fraud other than a statement respecting the debtor's financial condition. I first want to mention a case decided by the U.S. Supreme Court after all the briefing was submitted, so it's not in anybody's brief, because it was Did you give us a 28-J letter on that? No, Your Honor, I can't. It's Bullock v. Bank Champagne, 133 Supreme Court, 1754. Bullock, B-U-L-L-O-C-K v. Bank Champagne, 133 Supreme Court, 1754, 2013. It's a case relating to 11 U.S.C. Section 523A-4, which is non-dischargeability for breach of fiduciary duty, but its importance is the U.S. Supreme Court reiterated in that case that exceptions to discharge must be construed narrowly in favor of the debtor and against the creditor. And actually in that case came up with a very narrow interpretation of what would constitute non-dischargeability for breach of fiduciary duty. So it's important for the principle construed Narrow construction. The narrow construction, yes. It's 523A-4. We already knew about that, didn't we? Narrow construction. Well, yes, Your Honor, because it's long been the rule. Yes. All right. The most obvious reason why the non-dischargeability decision should be reversed is that I guess let's just go right to that, the non-dischargeability. Is non-dischargeability is a question of fact, is it not? Not here, Your Honor, because the facts that show that as a matter Just a minute. Before we go on, is this a decision which the bankruptcy court makes questions of fact or not? Makes determinations of fact or not? There was a determination of fact, but it's not the facts that relate to justifiable reliance and show that Well, all you're suggesting is there's clearly erroneous factual determination. No, Your Honor. What I'm saying is this, and it's recited at the BAP decision, at ER 2332-2334, the facts are not in dispute. And therefore, the application of the controlling law, the U.S. Supreme Court case Fields v. Mann, and the Ninth Circuit cases Eshi and Anastas, that is a question of law. The undisputed facts here are that CityCross So as a result of what you're suggesting here, then the bankruptcy court's decision here as to the non-dischargeability Because there were clear facts, no dispute, no dispute about what they meant or what they intended or how they factored in It's a question of law, and therefore every court thereafter to review it can substitute their own decision? Is that what you're saying? Issues of law are always reviewed de novo. I understand, but is that what you're saying? Then I can then look at all the facts in this record and make my own determination Because they're undisputed, whether they meet the standard that's here? Is that what you're saying? Where the facts are undisputed, that there was Well, answer my question. Are you saying that or not? Are you saying that I can look at these facts and construe them the way I want to to make my own determination? Is that what you're saying? No. Because they're clear? Your Honor, where the facts are undisputed We got that far with my question. Then when the facts are undisputed, as here, then it is a question of law whether those facts constitute justifiable reliance or do not constitute justifiable reliance. So I can institute my determination of that more than what I can do in the normal situation where I'd have to give deference to the one who's hearing the testimony. That's what you're suggesting? Because I have all kinds of cases that say that when we're looking about justifiable reliance, it's a question of fact to be determined by the district court. And therefore, in this situation, then the bankruptcy court and even the bank, even the BAP went overboard in saying, and they were the ones determining this as well. The Supreme Court held that the degree of the creditor's reliance need not be justifiable, not reasonable. And we have to give discretion. We have to look at what the bankruptcy court did. And then they say, I mean, that was the worry that I have. They almost said, I don't know if I believe in this. While the circumstances of this case may extend the limits of what we may normally consider justifiable reliance, at least with respect to some of the later orders, on this record, we cannot conclude that the bankruptcy court's finding that appellees justifiably relied is illogical, implausible, and without support, which is a clearly erroneous finding. Your Honor, that's not a finding. That is a conclusion of law based on the facts that, yes, the undisputed facts that you should give 100% deference to. The undisputed facts are, for a while, City Cross paid, paid for many purchase orders, each purchase order being a separate contract. So I can decide on my own in this particular situation, I just don't think there was anything but justifiable reliance, and that will be fine. No, Your Honor, it is the appellate court's job to apply the law to, in this case, the undisputed facts. Well, I've got the facts in front of me, and I think it's justifiable reliance. You can't say anything about that, then. Well, not correct, Your Honor. The U.S. Supreme Court in Field v. Nance and the Ninth Circuit, this circuit in Eshi and Anastas, tells us when a creditor can and cannot justifiably reliance, and says, this circuit in Eshi and in Anastas says a creditor cannot show justifiable reliance when there is a danger of default. The creditor is aware there's a danger of default. Here we had actual default. Right. But isn't, doesn't that a little bit go off on the credibility of the witnesses before the court? The witness who says, here's why I didn't believe I was in jeopardy of being defaulted on the loans, or he hasn't paid me for a long time, he has defaulted, he keeps promising, and while I'm getting close to that, I still haven't gotten there yet. That's a question, a credibility issue with that witness, isn't it? It's not a credibility issue here, Your Honor. Not Mr. Christ's credibility, not anybody's credibility. Use the facts that the VAP found, which is, after there's a default, creditor Shenzhen issues into seven successive purchase orders, each a separate contract. Each one is entered into, each one is defaulted. Then they enter into the next one. They do that seven times. Creditor Danshan issues after default, issues, enters into five successive purchase orders, which are separate contracts, each of which is defaulted successively, and Wanda, the same thing, five successive contracts after each is defaulted. As a matter of law, after you've got a default, you cannot be justifiably relying on whatever the debtor is saying, because you know there's a problem. But that isn't correct, because the Supreme Court held that the degree of the creditor's reliance need only be justifiable, not reasonable. Yes. Reasonable means creditor has to investigate, but justifiable, as the U.S. Supreme Court said in Fields v. Mann, a creditor cannot recover if he blindly relies upon a misrepresentation, the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation. And the Supreme Court says the creditor cannot justifiably rely if he has discovered something, which should serve as a warning that he is being deceived. This isn't a question of danger at default. This isn't a question of some red flags, like there might be a question in a credit report. This is actual default. And that is contrary to the law to find justifiable reliance when you've got actual defaults. And that is actually why the BAP and the portion that you, Judge Smith, mentioned in the BAP decision says, well, the circumstances would extend the limits. Yeah, the circumstances here are directly contrary to the controlling U.S. Supreme Court in Ninth Circuit law on when you can and can't have justifiable reliance. So when the facts here and they are laid out by the BAP decision and nobody is disputing them, this, you know, successive defaults, but you keep sending shoes. Counsel, just a second. I think it would be helpful if you paused just for a second. And let me ask this question. Just assume that we disagree with you on how to interpret what the facts were and that we assign that there has to be clear error on what was decided before. Let's just assume that. It seems that the Scintic Cross had a history of paying creditors for its early orders, and overall it paid most of what it owed and lots of money to each creditor. Does that not provide some evidence that the creditors justifiably relied on Kai's assurances that payment was coming? The fact that approximately 60% of the total amount ever ordered was paid for, that actually cuts in favor of the debtor showing that the debtor did intend to repay. Now, remember Anastas. In Anastas, the Ninth Circuit case, Anastas was a debtor that made implied representations by using his credit cards that he intended to repay. He had a gambling problem, so there was not actually a chance in the world that he was going to repay because, well, he was broke. But his debt was dischargeable. There's no case that I could find or that the appellees pointed out where 60% of the total debt was paid and yet there was held non-dischargeability for no intent to repay. That is another element, isn't it? That isn't really justification. That's on another element of what the bankruptcy court had to find, correct, the intent? Well, the non-dischargeability here, Judge Smith, is solely for no intent to repay. That was all that was found below. There are, in fact, more elements than justification, right? Correct. A creditor has to prove all five elements. Right, and the one you're really talking about now is the intent to repay, which the district court again said your client didn't have the intent to repay. So now you're really making an argument on intent to repay, are you not, rather than justifiable reliance. I'm just trying to get this down so I can kind of get it in my thought process. There were three things we're really talking about here that I think you appealed, and I'm trying to get them in perspective in what you're arguing to me. I mean, it seems to me you're talking more now on intent, which is another place where the district court moved against you, right? Well, the high repayment does corroborate intent to repay. The fact that the shoes that everybody in the transaction understood that payment would come from selling the shoes shows, and Citicross was selling the shoes, shows intent to repay. Could I ask a question? Along that we say they were selling the shoes. Were they men's and women's or women's only or men's only? Women's shoes, I think, primarily. Now, the reason I say that, do I get into the business operations at all about this, because I'm a little bit familiar with the footwear business. I do know the seasonal nature of this, and the need to get things designed, manufactured, and shipped to meet the season. There's a great lag time in there, because if you don't have the right shoes at the right season, you can't sell anything. So is that a factor that we would have to take into account or that should have been taken into account of the quick, almost assembly line nature of how these transactions work as to a factor as to whether you expect to get paid or not? Maybe I'm not clear. Well, there were delays in shipments, there were some problems with the quality, and the appellees, they got an attachment order on the shoes, certainly made it hard to sell what shoes were left at that time, impossible to sell those. But the original case was a claim that the money was siphoned out of Citicross. That was not proven. And they kind of got the fallback position of, oh, no intent to repay. But after all these defaults, they couldn't be justifiably relying on anything Kai said. In fact, they weren't relying on it. They were relying on the shoes being said. And there is a quote in the BAP decision that says, well, and in the bankruptcy court decision says, well, in the difficult situation they were put, they, you know, if they were going to have any chance of getting paid, they needed to ship more shoes. So they were shipping the shoes being aware the difficult situation was, ah, because of the default. So being aware of a high risk of nonpayment, they still chose to ship the shoes. These were sophisticated companies. And Field vs. Mann talks about that. You have to think about the sophistication. They understood the risk they were taking. Right. But did that shift, if he was continuing to order shoes, selling them, not paying, did that shift him from nonpayment of a debt to a fraudulent activity? If the shoes had been sold, then Citicross could have paid. But for whatever reason, the shoes didn't get sold. There was no evidence that any funds were siphoned off. And so that. Maybe you could sum up because you're past your time. I understand your resistance, Judge Smith, but the. I don't have a resistance. I'm just trying to figure out when you say this is a legal question, what you're really telling me. Because that kind of bothers me, having been on the district court, what you're really telling me. So I wanted to make sure I understood it. And I'm allowing you now to sum up your argument. Based on the undisputed facts that are stated in the BAP decision that are at ER 233-2334, seven defaults, five defaults, five defaults, it is a question of law whether with those facts, as a matter of law, you could have justifiable reliance. And you could not. Pursuant to Field v. Mann, pursuant to Eshi, pursuant to Anastas, and pursuant to the other cases we cited, like Rivasol, the 10th Circuit case, where it said, no, the second loan, it wasn't justifiable reliance because the first loan was already in default when you made the second loan. And that is, this is like Rivasol, but, you know, seven times, five times, five times more so. I understand your argument. We'll now turn to Mr. Kee. Kee? Thank you very much, Your Honor. I should have Judge McGeer pronounce his name. Right. I know everybody promotes my name, Kee, so I have to do it myself every single time. Good morning. Thank you very much, Your Honor. And I just want to quickly answer your question. First, it's all the ladies' shoes. Okay. No men's shoes here. And also to answer the question that addressed the issue that Katherine has just raised, that the shoes got sold. Actually, she said they did not get sold. In fact, it's in the record the shoe all got sold. And also, I'm not only going to focus on the issue of justifiable reliance and on the facts, as I agree with all the justices have said, these are factual issues, not legal issues here. And I'm only going to focus on the part that the appellant is using the cases that is readily distinguishable from what we have here in the facts because all the cases cited by the appellant in support of the justifiable reliance with the red flag issues are all about credit-slash-loan institutions, not about the traders in merchandise. When does reliance assurance, reliance on assurance stop becoming justifiable? The fifth time a payment is missed, the seventh time, the tenth time? Where are we supposed to? That's exactly what I'm trying to address here because the relationship between the merchants in trading shoes like actual merchandise are different from the loan and the banking institution. The banking institution is dealing with thousands, if not millions of customers. The system requires one customer's default will require them to pay attention to this default, whereas in this kind of trading of merchandise, the business ties and the personal relationship and the business relationship is more important. And they've been knowing each other for a long time. The cases started like seven years ago. And they've been doing business with each other for at least several years. And you don't want to break a business relationship just by some defaults that have just been made. And, okay, no, I'm not going to do business with you anymore. We're talking about people, the manufacturers in China who is making these shoes on order, which is in specific order from the importers here, the rate tie here. They have to ship all these merchandise. And as you have just mentioned, these shoes most of the time are already made to order. And you just can't throw them away when there's several defaults right there. And for them to just recognize, okay, I'm not going to do business with you, who are they going to sell these shoes to with all this merchandise already being manufactured? So what I'm trying to distinguish here is that even though the patent says that the laws are supporting them in terms of their credit, their loans, the credit they make on the defaults are loans, which is not the case. They're not in the business of making loans. They're in the business of making shoes and sell them. And to make sure that if they sell them, they can make money out of it. For several defaults, I mean the red flag part on this one here, it may be very well funded for the banking institutions and credit unions and loan institutions, but it may not be for the ones who are manufacturers in China who is trying to ship their merchandise to the United States. And Ray Tsai is probably one of the largest importers in California of all these imported shoes. And they don't want to break this kind of relationship just over several defaults. So that's what I'm trying to say here. It's very distinguishable on these facts, on this law, in terms of they're trying to support this red flag issue here. What about the narrow way we're supposed to apply this? Can you speak to that? I mean we're supposed to really. You mean the narrow issue on the justifiable reliance or the narrow issue on the intent issue here? The narrow issue on dischargeability. We're supposed to really be trying to let the debtor out. Oh, that I think we have just in the brief we have thoroughly discussed that. Well, tell me here. Well, the thing is that this is, I'm sorry, a year ago, and the case has been going on for like seven, eight years. Well, today's your day, though. Oh. Well, you're examining, testing me on this. I mean, what she's really saying is, you know, really the bankruptcy court should be wanting to let the debtor out and get a new chance. And this seems like, I mean, failing to pay and failing to pay and failing to pay and failing to pay, not just once or twice, seven times. And we're supposed to say that's justifiable reliance when we're generally looking to get the debtor out. That's what my client's saying. What do we do with that? Well, they did pay for the first. Oh, my God. I'm sorry. As Appellant just mentioned, they did pay for the very beginning towards certain period of time into the transactions that they have made payments, which is also a fact that my client relied on in making a forgiveness of not even forgiveness, actually. What I'm trying to say is that they just don't want these several defaults to ruin the future business of all these merchandise sitting there to be shipped over. Well, that's why I come back, circle back to the point about we're supposed to apply this narrowly. Bankruptcy court found, the trial judge found on credibility and facts that there was reasonable reliance. If App says, well, I'm not so sure about that, but they had the people in front of them judge the credibility. Now, in that testimony in front of the trial judge, did they ever get into the nature of the footwear business and how you place orders for a season six months in advance to where the manufacturer has to go out and get the raw material, develop the thing and produce it and have it here for that, let's say, the first New Year's Day sale or something like that? Did that ever come out to determine whether that aided their thoughts about reasonably reliance on things like that? The answer is yes. I would want you to get into why the bankruptcy court should have entered a dollar amount of judgment on non-dischargeability here. It should not be entering a dollar amount. That is actually within the discretion of the trial court. Was there a constitutional exercise under Article III, under Stern? That, Your Honor, I'm sorry, I did not really get into that in our briefing here. I understand. I just saw that as an issue she had presented. Oh, okay. No, I think the entire focus of the appeal here is on the justifiable reliance. That's why I'm focusing all my arguments on this part of it. All right. Thank you very much. Thank you. Do you have more questions? Do you have more questions? Now I owe her at least a pound of chocolates for calling her my client instead of my colleague. Thank you very much, counsel, for your arguments. We very much appreciate it. This is Case 12-56656 and 12-60037. Kai v. Shenson, Smarting Industry, is submitted. We'll move now to Case 12-5665.
judges: McNamee, Smith, Murguia